UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY DOUGLAS AULD, II,

    Plaintiff,                                 CIVIL ACTION NO. 10-14615

    v.                                         DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On November 19, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 7, 8).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on December 14, 2007, alleging that he became unable to work on July 25, 2007 (Tr. 8, 160-176). Plaintiff's claims were initially disapproved by the Commissioner on March 28, 2008 (Tr. 8, 87-94). Plaintiff requested a hearing and, on January 14, 2010, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Elliott Bunce,

who considered the case *de novo*. In a decision dated April 29, 2010, the ALJ found that Plaintiff was not disabled (Tr. 8-17). Plaintiff requested a review of this decision on May 22, 2010 (Tr. 157-159). The ALJ's decision became the final decision of the Commissioner on September 16, 2010 when, after the review of additional exhibits[1] (AC-14B, Tr. 157-159), the Appeals Council denied Plaintiff's request for review (Tr. 1-4).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    STATEMENT OF FACTS**

   *A.    ALJ Findings*

Plaintiff was 32 years old on his alleged disability onset date (Tr. 15). Plaintiff has past relevant work as a laborer (Tr. 15). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 25, 2007, Plaintiff's alleged disability onset date (Tr. 10). At step two, the ALJ found that Plaintiff had the following "severe" impairments: Marfan's syndrome with coronary artery disease, learning disability and obesity. *Id*. At step three, the ALJ found no

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 11-12).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform: "work that does not require: exertion above the light level...or more than simple, routine, repetitious tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; or more than occasional contact with the public, coworkers or supervisors" (Tr. 12). At step four, the ALJ found that Plaintiff could not perform his previous work as a laborer. (Tr. 15) At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of "light" jobs available in the national economy, such as dining room attendant (73,000 jobs nationally); dishwasher (137,000 jobs nationally); inspector (127,000 jobs nationally) (Tr. 16). The ALJ also found that Plaintiff could perform the following "sedentary" jobs: inspector (13,000 nationally); assembler (40,000 jobs nationally); or machine operator (28,600 jobs nationally) (Tr. 16).

  B. *Administrative Record*

    1. **Plaintiff's Testimony and Statements**

In January 2008, Plaintiff wrote in a function report submitted to the Social Security Administration that he spent time with his children during the day, took his children to after-school activities and performed some cooking and shopping for his family (Tr. 209-210). Plaintiff checked a box indicating that he had "no problem" with his personal care, such as grooming, bathing or dressing himself (Tr. 210). Plaintiff also reported that he used a riding lawnmower, watched sports and hunted (Tr. 213).

During the April 2010 hearing, Plaintiff testified that he was 35 years old and that he lived with his wife and six children (Tr. 50). According to Plaintiff, he completed the tenth or eleventh grade of high school but could not read well (Tr. 50). Plaintiff stated that he performed whatever chores his wife asked him to do, including cleaning up around the house and doing laundry on occasion (Tr. 51).

Plaintiff's wife testified that Plaintiff was not capable of handing money, that he last worked as a laborer, but that he could no longer work in any capacity due to his physical condition (Tr. 56-57). Plaintiff's wife also testified that Plaintiff took care of their two young children with her assistance (Tr. 58). Specifically, Plaintiff's wife explained that she had to put out the children's clothing, ensure that the children were bathed and remind Plaintiff of when to feed the children (Tr. 58-59).

### 2. Medical Evidence

As discussed below, Plaintiff only challenges the ALJ's discussion of Plaintiff's learning disability; therefore, only the medical evidence concerning Plaintiff's alleged mental impairments will be summarized:

On January 9, 2008, Plaintiff saw Thomas L. Siebert, M.S., for a learning disability evaluation (Tr. 400). Mr. Siebert noted that Plaintiff arrived promptly for his evaluation, was cleanly and casually dressed and groomed (Tr. 400). Mr. Siebert reported that Plaintiff denied having any perceptual problems that might interfere with his ability to read, but that Plaintiff claimed he had trouble concentrating (Tr. 401). Mr. Siebert noted that Plaintiff claimed to have "earned average grades in the school setting," although he had to repeat the first grade (Tr. 401). Mr. Siebert noted that Plaintiff was enrolled in special education classes from the first through fifth grade, and that Plaintiff stopped attending school in the eighth grade (Tr. 401).

Mr. Siebert reported that Plaintiff was functioning in the below-average to borderline range of intellectual ability as measured by the Wechsler Adult Intelligence Scale-III test (Tr. 402). Plaintiff had a verbal IQ score of 69, a performance IQ score of 80 and a full-scale IQ score of 72 (Tr. 406). Plaintiff displayed an extremely poor vocabulary (Tr. 402), only a borderline ability to correctly pronounce printed words and average reading comprehension and math skills (Tr. 404). Mr. Siebert ultimately concluded that Plaintiff would be able to pursue work as a home remodeler (Tr. 413).

### C. *Plaintiff's Claims of Error*

Plaintiff raises one argument on appeal, namely, that the ALJ did not properly apply the procedural requirements of 20 C.F.R. §§ 404.1520a, 416.920a – commonly referred to as the "special technique" – when assessing Plaintiff's mental conditions. More specifically, Plaintiff asserts that the ALJ failed to rate the degree of Plaintiff's limitations (*e.g.*, none, mild, moderate, marked or extreme) in the four broad functional categories (*e.g.*, activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation) identified in § 404.1520a(c)(3)

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found

during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.     *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

    **C.**    *Analysis and Conclusions*

As noted earlier, Plaintiff argues on appeal that the ALJ "failed to properly evaluate the 'severe' impairment of learning disability in accordance with 20 C.F.R. § 404.1520a ..." (Dkt. 7;

Pl.'s Mot. at 6). More specifically, Plaintiff asserts that the ALJ failed to explicitly state the degree of Plaintiff's functional limitations in the four broad categories identified in § 404.1520a. The Commissioner responds that the ALJ did in fact perform an analysis under this regulation, and provided significant discussion regarding his assessment of Plaintiff's functioning in each of the four domains (Dkt. 8; Def.'s Mot. at 6). The Commissioner further argues that – even assuming the ALJ did not specifically address the degree of limitation in the four broad functional categories, and thus committed a procedural error – such error is harmless and does not necessitate a remand. The Commissioner is correct on both points.

### 1. The ALJ Complied With The "Special Technique"

The regulation at issue requires that an ALJ apply a "special technique" at steps 2 and 3 to evaluate a claimant's mental impairment. *See* 20 C.F.R. § 404.1520a(a). At step 2, an ALJ must "rate the degree of functional limitation resulting from [a medically determinable mental] impairment(s)" in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). Regarding the first three functional areas, the following five-point scale is used: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). As to the last functional area, episodes of decompensation, a claimant is scored on a four-point scale: none, one or two, three, four or more. *Id.* "If the ALJ rates the first three functional areas as 'none' or 'mild' and the fourth area as 'none,' the impairment is generally not considered severe and the claimant is conclusively not disabled." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (quoting 20 C.F.R. §§ 404.1520a(d)(1)).[2]

---

[2] More precisely, the regulation states: "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521)." 20 C.F.R. § 404.1520a(d)(1).

If the mental impairment is deemed to be "severe," the ALJ proceeds to step three and determines whether the claimant's severe impairment meets or is medically equivalent to a listed impairment. *Id.* (citing 20 C.F.R. §§ 404.1520a(d)(2)). If the ALJ determines that the claimant has a severe mental impairment that fails to meet or medically equal a listed impairment, the ALJ will then assess the claimant's RFC and continue on with the remaining two steps of the five-step process. *See* 20 C.F.R. § 404.1520a(d)(3).

In this matter, at step three, the ALJ found that Plaintiff's learning disability did not meet or medically equal a listed impairment (Tr. 11-12). Specifically, the ALJ considered whether Plaintiff met or medically equaled Listing 12.05. "The structure of listings for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). A claimant will not be found disabled under the listing for mental retardation unless he satisfies the diagnostic description in the introductory paragraph and one of the additional sets of criteria found in paragraphs A through D. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Listing 12.05 reads as follows:

> **12.05 Mental Retardation**: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (*e.g.*, toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

-11-

>OR
>
>B. A valid verbal, performance, or full scale IQ of 59 or less;
>
>OR
>
>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
>OR
>
>D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>>1. Marked restriction of activities of daily living; or
>>
>>2. Marked difficulties in maintaining social functioning; or
>>
>>3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>
>>4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

There was a dearth of medical evidence in the record suggesting that Plaintiff suffered from a disabling mental impairment. The administrative record is devoid of evidence establishing that Plaintiff experienced subaverage intellectual functioning before age 22. This fact alone makes Plaintiff ineligible for Listing 12.05. Indeed, the only IQ testing in the record occurred in January 2008, when Plaintiff was 37 years old (Tr. 406). Moreover, the ALJ correctly noted that Plaintiff testified he finished the 11th grade in regular classes, and did not attend special education classes (Tr. 11).[3] As such, the ALJ found that Plaintiff did not satisfy

---

[3] The ALJ also noted that Plaintiff's testimony was directly contrary to what Plaintiff told Mr. Siebert (*i.e.,* that he was in special education classes from the first thorough the fifth grade, and left school in the eigth grade). The ALJ appropriately discounted Plaintiff's statements to Mr. Siebert, since there was no other evidence in the record supporting Plaintiff's statements to Mr. Siebert and since Plaintiff's own testimony during the hearing contradicted his statements to Mr. Siebert.

the diagnostic description in the introductory paragraph to Listing 12.05. Substantial evidence supports this conclusion.

Furthermore, Plaintiff's January 2008 IQ test indicated that Plaintiff had a verbal IQ score of 69, a performance IQ score of 80 and a full-scale IQ score of 72 (Tr. 406). There is no evidence in the record that Plaintiff was dependant on others for his personal needs – to the contrary, Plaintiff himself reported that he had "no problem" with his personal care (Tr. 210). Thus, the only paragraphs of Listing 12.05 Plaintiff could arguably meet are C or D, based upon Plaintiff's verbal IQ score of 69. Plaintiff's argument on appeal focuses solely on paragraph D. As to paragraph D, the ALJ found:

> Subparagraph D of listing 12.05 requires a marked limitation in two of the four enumerated areas of functioning: *these have not been established*. [Plaintiff] testified that he does some household chores, and, as discussed, he cares for his two young children when his wife is at school.[4] [Plaintiff's] wife testified that he has some problems interacting with people, but I find no serious incident with friends, family, or authority figures, to indicate more than mild limitations in social functioning.[5] The testing performed by Mr. Siebert, showed [Plaintiff] had low IQ scores which may reasonably be expected to affect [Plaintiff's] ability to concentrate, persist, or maintain pace, but, despite these limitations, he has been able to sustain unskilled work as a laborer, and I find no evidence in the record to support a finding that his intellectual functioning changed materially at any time prior to or after his alleged

---

[4] The ALJ discussed activities of daily living, which "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C) (1).

[5] The ALJ discussed social functioning, which involves a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C)(2).

disability onset date.[6] There is no evidence of an episode of decompensation (Tr. 12) (emphasis added).

Thus, the record reflects that the ALJ actually followed the "special technique" at step three by including specific findings and conclusions in his decision (Tr. 11-12). Granted, the ALJ did not explicitly rank Plaintiff's degree of functioning (*i.e.*, none, mild, moderate, marked or extreme) in each the four domains; however, the ALJ discussed Plaintiff's activities of daily living, social functioning, ability to maintain concentration, persistence, or pace and episodes of decompensation and then concluded that Plaintiff did not demonstrate that he had a "marked" limitation in at least two of the four areas (Tr. 12). Therefore, the ALJ concluded that Plaintiff did meet the requirements of Listing 12.05, subparagraph D (Tr. 12). While the ALJ may not have used all of the pertinent terms, the ALJ clearly considered Plaintiff's level of functioning in the four broad categories. As such, Plaintiff has not demonstrated that the ALJ committed reversible error.

### 2.  Even If The ALJ Erred, Such Error Is Harmless

Even assuming that the ALJ failed to properly follow the "special technique," the undersigned believes that any such procedural flaw is harmless: as discussed above, the ALJ continued on to step three, and he included Plaintiff's learning disability as an impairment in his step-three determination (Tr. 11-12). In *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009), the Sixth Circuit was faced with this same issue, and explained how a reviewing court determines whether an ALJ's non-compliance with a procedural regulation amounts to harmless error. *See* 582 F.3d at 655. The Sixth Circuit stated that "even if supported by substantial

---

[6] The ALJ discussed "[c]oncentration, persistence, or pace [which] refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C)(3).

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)). Regarding § 404.1520a specifically, the Court concluded that it was not a substantial right. *See Rabbers*, 582 F.3d at 656–57.

The issue before this Court is whether Plaintiff was prejudiced on the merits by the ALJ's failure to comply with 20 C.F.R. § 404.1520a. Even assuming that the ALJ failed to follow the regulations by not explicitly listing the degree of limitation for each of the four functional catagories, I find that such error was harmless and would not warrant a remand. *See Rabbers*, 582 F.3d at 658 ("[T]he ALJ's failure to rate the B criteria at step two ... was clearly harmless. Notwithstanding this error, the ALJ ultimately concluded that [the plaintiff] had a severe mental impairment and proceeded to step three, which was all [the plaintiff] could have asked for").

### III. RECOMMENDATION

In sum, I find that Plaintiff's argument on appeal is not well-taken. The ALJ complied with the "special technique" set forth in 20 C.F.R. §§ 4041520a and 416.920a. Furthermore, even assuming, *arguendo*, that the ALJ's analysis was somehow flawed, such error was harmless and would not warrant a remand.

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon  
MARK A. RANDON  
UNITED STATES MAGISTRATE JUDGE

Dated:  December 30, 2011

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 30, 2011, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*  
*Case Manager to Magistrate Judge Mark A. Randon*  
*(313) 234-5542*